The judgment is reversed and case remanded.

REVERSED AND REMANDED.

---

## ED. JENKINS v. THE STATE.

1. INSTRUCTIONS TO JURY IN CASES OF MURDER.—On trial for murder, it is sufficient, if, looking to the entire charge, the jury are given sufficient and appropriate instructions to enable them, by their application to the evidence, to correctly determine of which grade of offense the defendant should be convicted.

2. SEPARATION OF JURY IN FELONY CASES.—A juror, on a trial for murder, leaving his fellows and the officer in charge of them standing in the street, and barely entering a saloon immediately on the street to get a cigar, being in full view and hearing of the officer and his fellows all the time, and having no conversation whatever with any one—such separation of the jury is no ground for reversal of the judgment, unless there was some reason to suppose wrong or injustice resulted from it to the prisoner.

APPEAL from Bexar. Tried below before the Hon. George H. Noonan.

The jury returned a verdict of murder in first degree, and punishment by confinement for life in the penitentiary.

The defendant urged a motion for new trial, because the court erred in the fifth charge given to the jury, in regard to the law, and because the verdict was " contrary to the law and the testimony."

This motion was overruled, and notice of appeal given.

The defendant was allowed to, and did, file an amended motion for new trial, for the reason—

" That one of the jurors, Joseph Schuetz, who was impaneled to try said cause, did separate from the balance of the jury, and went to the bar-room of one Jack Harris, after the jury had retired to consider of their verdict."

This motion was sustained by the affidavit of one H. McCormack.

Counter affidavits were filed explaining the separation, as stated in the opinion of the court.

This motion was also overruled, and defendant appealed.

Upon the trial, the court, after giving the statutory definition of murder, continued its charge:

4th. To convict Jenkins of the crime of murder in the first degree, you must be satisfied, from the evidence,

1. That the defendant, Jenkins, shot Heckman, and that he did it purposely.

2. That he shot him with the intent to take his life; and

3. That he shot him with deliberate and premeditated malice.

5th. Malice is either express or implied. The evidence of express malice must arise from external circumstances. These external circumstances, indicating the design, may transpire at the time of the killing, as well as before that time; for although the killing may be upon a sudden difficulty, it may be attended with such acts of enormity, cruelty, absence of passion, and cool, calculating method, as

will afford ample evidence to establish in your minds the conviction that the killing was the result of a sedate, deliberate mind, and that Jenkins went to the place where Heckman was at work with a formed design and intention to take the life of Heckman. The length of time that intervened between the design so formed and its execution is immaterial, as the law, reason, and common sense unite in declaring that the apparently instantaneous act may be accompanied with such circumstances as to leave no doubt of its being the result of premeditation. Consequently, however sudden the killing may have been, if the means used or manner of doing it indicate a sedate mind, and that Jenkins had formed a design to take the life of Heckman, such a killing is willful, deliberate, and premeditated, and the offense is murder in the first degree.

(6th related to punishment, &c.)

7th. If, however, you are of opinion that Jenkins is not guilty of murder in the first degree, or if you have a reasonable doubt thereof, you will then inquire if Jenkins is guilty of murder in the second degree, as murder in the second degree is hereinafter defined.

8th. Where a homicide is committed, and there is no proof before you of that express malice hereinbefore explained, which would require you to find a verdict in the first degree, or, in other words, if the killing was done under the impulse of a sudden, rash, inconsiderate impulse, without previous preparation or premeditated design, manifesting no prearranged determination to take life; but where the deliberation to kill is formed and executed at the moment of the killing, malice will be implied, and implied malice is a necessary ingredient to establish the crime of murder in the second degree.

9th. If you believe from the evidence that Jenkins killed Heckman, but that the facts and circumstances as detailed by the witnesses do not disclose a formed design on the part of Jenkins to kill Heckman antecedent to the killing,

and if you believe there is no proof of a concerted scheme,
design, or plan to kill Heckman, yet that Heckman was
killed by Jenkins under circumstances as indicated in
charge 8th, then and in that event you will find a verdict
of not guilty of murder in the first degree, and instead·
thereof you will find a verdict of murder in the second de-
gree, and you will assess the penalty therefor at confine-
ment in the penitentiary for a term of years that you may
deem an adequate punishment, not less than five years.

*Shecks* and *Sneed,* for appellant.

*George Clark, Attorney General,* for the State.

MOORE, ASSOCIATE JUSTICE.—We have given this case
that consideration which the grave character of the offense
of which the appellant is convicted unquestionably de-
mands.    But after a full and careful examination of the
record, we are forced to the conclusion that it presents no
ground for the reversal of the judgment.

There are only two questions presented by the record
for which it is claimed the judgment should be reversed.
First, it is said the fifth paragraph of the charge given by
the court did not sufficiently show the distinction between
murder in the first degree and murder in the second de-
gree, and was therefore calculated to mislead the jury.    It
was not the purpose of the court, by this paragraph of the
charge alone, to draw the distinction between murder in
the first and murder in the second degree.    It was evi-
dently intended by the paragraph, in connection with the
preceding portions of the charge, to present to the jury
such principles and rules of law as would enable them, by
their proper application to the evidence, to say whether the
defendant was guilty of murder in the first degree.    Where
the evidence is susceptible of a construction which would·
warrant a verdict of guilty in the lower degree, there is

unquestionably error if the court fails to instruct the jury upon this view of the case. But if, when we look to the entire charge, the jury are given sufficient and appropriate instructions to enable them, by their application to the evidence, to correctly determine of which grade of offense the person should be convicted, if guilty, this is all that is required. Most assuredly, if murder in the first degree is properly defined and explained to the jury in one paragraph, the charge is not subject to objection, because the distinction between it and murder in the second degree is not adverted to and explained therein, if the law as to it is also properly given in a subsequent part of the charge. Nor can it be said that the jury are liable to be misled merely by such an arrangement of the instruction given them by the court.

A review of the facts does not lead to the conclusion, beyond all doubt, that it was necessary in this case for the court to instruct the jury upon murder in the second degree. But this was done in the eighth and ninth paragraphs of the charge, to which no objection was made. What we have said answers the literal exception taken to the charge as presented in the record. We suppose, however, it must have been intended by the objection to this particular part of it to insist that it did not properly define murder in the first degree, but did so in a manner calculated to lead the jury to find appellant guilty of the higher grade of offense, when, under proper instructions, they might have found him guilty of the lower. But we cannot agree that the charge complained of is liable to any such objection. It clearly presents, we think, in view of the facts in this case, sound rules and correct principles of law for the guidance of the jury in determining whether or not appellant was guilty of murder in the first degree. The instructions are in strict accordance with the principles announced by this court in former decisions.

The second ground upon which it is maintained the judg-

ment should be reversed is, the alleged separation of one of the jurors from his fellows.    The code in express terms forbids, in cases of felony, the separation of the jury, after they are sworn and impaneled, until they have returned a verdict, unless by permission of the court, with the consent of the District Attorney and the defendant, and then in charge of an officer. (Code Crim. Procedure, arts. 605,. 607.)  And certainly in capital cases it is of the utmost importance that this rule should be strictly observed; and the jurors themselves, as well as the officers of the court, should be careful to guard against even the slightest violation of it.    We think there was an impropriety in the conduct of the juror complained of in this case, which should have been avoided, though it is evident, if it can be said that the juror had separated from his fellows, he did so nominally, rather than in sense and contemplation of law. Although the juror left his fellows and the officer in charge of them standing in the street, he barely entered the door of a saloon immediately on the street to get a cigar, was in full view and hearing of the officer and his fellows all the time, and had no conversation whatever with any one. (Jack *v*. The State, 26 Tex., 3.)

But if we admit that this was such a separation of the jury as is forbidden by the code, it certainly is no ground for the reversal of the judgment, unless there was some reason to suppose wrong or injustice might have resulted from it to appellant.    Article 672 of the Code of Criminal Procedure says: " New trials in cases of felony shall be granted for the following reasons, and no other: " after which it enumerates ten distinct grounds, but in none of these is it intimated that a new trial may be granted merely from the fact of the separation of the jury.    The only ground here set forth under which it can be claimed the court may grant a new trial on account of the separation of the jury, is the eighth, which reads: " When, from the misconduct of the jury, the court is of the opinion that

the defendant has not received a fair and impartial trial, it shall be competent to prove such misconduct by the voluntary affidavit of a juror, and a verdict may in like manner, in such cases, be sustained by such affidavit." But the record does not show the slightest reason to suppose that appellant has not received a fair and impartial trial, consequently the court was not authorized to grant a new trial upon this ground.

There is no error in the judgment, and it is therefore affirmed.

AFFIRMED.