### JOE HALL v. THE STATE.

No. 6841. Decided May 17, 1922.

**Murder—Misconduct of Jury—Receiving Other Evidence—Argument of Counsel.**

Where, upon trial of murder, the State relied almost entirely upon the confession of defendant to establish his guilt, and from it, it appeared that he was led into the commission of the crime by the influence of his co-defendant, and there was no evidence whatever which showed the age of the said co-defendant, an allusion by the State's counsel that he was younger than the defendant and a discussion among the jury, after having retired to deliberate upon the case, that said co-defendant was only 19 years of age, and that it was not probable that the defendant followed his advice, which seemed to have induced an agreement among the jurors that the defendant was guilty and deserved the death penalty, is reversible error. Following Gilbert v. State, 85 Texas Crim. Rep., 608, and other cases.

Appeal from the District Court of Grayson. Tried below before the Honorable Silas Hare.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*Hamilton, Wolfe & Carlisle,* for appellant.—On question of misconduct of Jury: Goosman v. State, 171 S. W. Rep., 770, and cases cited in opinion.

*R. G. Storey,* Assistant Attorney General, and *Geo. P. Blackburn,* District Attorney 6th District, and *R. E. Eubank,* County Attorney, for the State.—Cited Oliver v. State, 159 S. W. Rep., 235. Goodman v. State, 91 S. W. Rep. 795, and cases cited in opinion.

(1)

HAWKINS, Judge.—Appellant and one Roy Hewitt were jointly indicted for the murder of Bob James. Appellant alone being upon trial, was convicted and his punishment assessed at death.

Deceased was a service car driver operating between Honey Grove and Ladonia. He was killed on August 4th, 1921 by blows on the head, badly crushing his skull in several places. Near the place where the killing occurred was found a hat. This was identified as belonging to appellant. We do not recite in detail the evidence but from the confession of appellant introduced against him we learn that he was 29 years of age, and that the killing was done by him and Roy Hewitt. The confession is to the effect that Hewitt was the instigator of the murder and that it was done for the purpose of robbery. Appellant claims that his co-defendant furnished the hammer with which the killing was done, and made arrangements with deceased ostensibly to carry the two of them to Ladonia, thereby making the opportunity for the killing which occurred on this trip. All the money found upon deceased was taken. Appellant received for his part $240.80. He disclaimed in his confession knowing how much money Hewitt got.

The State relied almost entirely upon the confession to establish appellant's guilt. It would appear from it that appellant was led into the commission of the crime by the influence and at the suggestion of Hewitt. No evidence whatever was introduced which would indicate the age of appellant's co-defendant. Ernest Hewitt testified that he (witness) was 24 years old, but does not say whether he was older or younger than his brother Roy. During the argument of counsel representing the State he told the jury that "Roy Hewitt was only about 19 years of age." Counsel for appellant excepted to this statement on the ground that it was not supported by any evidence in the record; counsel for the State replied in the presence of the jury that "Ernest Hewitt testified that he was twenty-two years of age and that Roy Hewitt the co-defendant, was his brother and was two years younger than he." Appellant objected also to the latter statement because it was highly prejudicial and unsupported by the evidence. The soundness of the objections is borne out by the record. The trial judge immediately instructed the jury orally not to consider any of the foregoing remarks made by counsel for the State. If the matter had ended here we might pass it as of no serious consequence. The jury was considering the case for more than 29 hours. Appellant urged as one ground for new trial misconduct of the jury in that they had received and discussed after their retirement evidence not given upon the trial. Upon the hearing of the motion six jurors were examined in open court, and affidavits of the other six were attached to the State's answer controverting the alleged misconduct. We find from the record that the jurors upon the first ballot all agreed that appellant was guilty, but for many hours debated the penalty, ten being for death, the jurors

E. Q. Griffin and T. C. Gentle holding out for 99 years in the penitentiary. The juror Gentle testified that J. W. Bailey, another of the jurors, in talking to the whole jury said that Roy Hewitt was only 19 years of age. The juror Griffin testified that he believed appellant was guilty and was willing to agree to a verdict of 99 years, but from the confession introduced in evidence he believed Hewitt was the guiltier of the two and had induced appellant to agree to the robbery and murder; that the juror Bailey in arguing the penalty with him made the statement that "Roy Hewitt was only 19 years of age, and that it does not look reasonable that a 19 year old boy could influence a 29 year old boy." Griffin says that relying on Bailey's statement that Hewitt was only 19 years of age, he agreed to the death penalty. The record does not show that Roy Hewitt was ever in the courtroom during the trial, and the discussion could not have been based on the jury's observation. Griffin says he asked Bailey how he knew Hewitt was only 19, and that he replied, "I know it." He further says that after this discussion while the jury were considering the case that Roy Hewitt passed with an officer where the jury were at dinner; that Bailey pointed him out and asked him (Griffin) what he thought about his age. He says the argument was made to him a number of times in the jury room that Hewitt was just a boy. Bailey admits that he argued in the jury room that according to the testimony of Roy Hewitt's brother that Roy could not be over 19 or 20 years of age. He claims to have believed that Ernest testified that he was two years older than Roy. The record, however, does not bear him out in this. Bailey claims that in his argument with Griffin to induce the latter to agree to the death penalty that Griffin said if he believed appellant struck the blow that killed deceased that he would agree to the death penalty, and referred to that portion of the confession wherein appellant stated that after he (appellant) struck deceased the first blow and they had taken the money that his co-defendant went back and struck him several other blows; that Bailey replied to this argument by calling attention to the judge's charge wherein he had substantially told them if they were acting together it would be immaterial as to which struck the blow. Bailey claims that nothing was said in this conversation about the age of Roy Hewitt at all; that Griffin said if he had so understood the charge of the court he would have agreed to the death penalty long before, and immediately thereafter on the next ballot he agreed to the death penalty. Some of the other jurors do not appear to have heard any conversation in which the age of Hewitt was discussed. The affidavits of the six jurors which were attached to the State's controverting answer do not undertake to deny that there was a discussion in the jury room with reference to the age of Hewitt, but all are to the effect that neither Bailey nor any other juror used any persuasion or argument to induce Griffin to vote the death

penalty on account of his age; that Griffin for a long time held out for a life sentence, and in the discussion Griffin said, ''If he was sure appellant struck the fatal blow he would be willing to assess the death penalty,'' and that Bailey in this connection told him (Griffin) that ''appellant's guilt did not depend on striking the fatal blow, but if he had the intention to kill or if he assisted or took part in the killing of deceased he would be guilty.''

It is clear, we think, that the case is taken out of the rule announced in many cases that where it becomes an issue of fact whether the jury did receive additional evidence or was guilty of other misconduct, the finding of the trial court would be binding upon us. Here we have an instance where three jurors testified positively that there was discussion in the jury room about a matter which was not in evidence. Three failed to hear it. Six do not deny that such discussion occurred, but say it was not used as inducement to secure Griffin's assent to the death penalty. It does not appear from the record that there was any direct reference to the county attorney's argument by the jury, but it is apparent that there was lodged in the mind of one juror at least the fixed idea as to the age of Hewitt; he asserts knowledge as to his age and uses this, according to Griffin's evidence, as a reason why the latter's position in holding out for life imprisonment should be abandoned. For some reason no proof as to the co-defendant's age was put in the record. It occurs to us to be pertinent on the general proposition of developing the res gestae, and placing before the jury all the facts incident to the actors in the tragedy. If the State believed appellant was trying to shift responsibility for originating the plan to murder and rob James onto his co-defendant, establishing the age of the latter as much younger than appellant would at least have been a circumstance for the jury to consider upon that issue. Without evidence properly before them, it seems the jury or a part of them, did appropriate improper information upon the subject to that very purpose. Article 837 C. C. P., providing in what instances new trials in felony cases shall be granted, in the first part of Subd. 7 thereof reads:

''Where the jury, after having retired to deliberate upon the case, have received other testimony.''

Subd. 8, or,

''Where, from the misconduct of the jury, the court is of opinion that the defendant has not received a fair and impartial trial.''

From McDougal v. State, 81 Texas Crim. Rep., 187, 194 S. W. Rep., 944, we quote as follows:

''* * * when a jury after it retires to consider its verdict receives other evidence damaging to defendant, the presumption of injury obtains, to rebut which the State must do more than to elicit the conclusions of the jurors that they were no influenced. These cases have been followed. Ysaguirre v. State, 48 S. W. Rep., 1005; Casey v. State, 51 Texas Crim. Rep., 433, 102 S. W. Rep., 725;

Horn v. State, 50 Texas Crim. Rep., 404, 97 S. W. Rep., 822; Hughes v. State, 69 Texas Crim. Rep., 369, 153 S. W. Rep., 1139.''

From Gilbert v. State, 85 Texas Crim. Rep., 608, 215 S. W. Rep., 106, we take the following quotation:

''We do not believe it incumbent upon us to speculate as to the effect of such testimony upon the other jurors, nor that a new trial should be denied because they may have stated the same did not have any effect upon them. If it be shown in any case, as we think it has been shown in this case, that the jury received testimony other than from the witness stand, our only course is to reverse the case.''

For other cases bearing upon the same subject we cite Weaver v. State, 85 Texas Crim. Rep., 111, 210 S. W. Rep., 698; McDaniel v. State, 77 S. W. Rep., 802; Luman v. State, 86 Texas Crim. Rep., 298, 216 S. W. Rep., 395; Suddath v. State, 90 Texas Crim. Rep., 401, 235 S. W. Rep., 210. As we understand the record in the instant case two jurors testify that the juror Bailey made a positive statement in the jury room that he knew the age of Roy Hewitt to be only 19. He may have been speaking from his personal knowledge. They were bound to have been discussing at that time the penalty. There was no other matter for discussion. They had immediately upon their retirement agreed upon appellant's guilt. It may readily be perceived, we think, how this might have worked injuriously to appellant, if it was necessary for us to speculate upon the probable effect of it. If the testimony of the juror Griffin is to be believed he had consistently held out for a life sentence against appellant, because he thought appellant had been led into the commission of the offense through the influence and persuasion of his co-defendant, but conceded the error of his position when assured by Bailey that the co-defendant was only a boy 19 years of age, and thereby was induced to agree to the death penalty. We have been unable to escape the conclusion that this matter improperly injected into the jury room falls within the principle announced in the many cases cited supra. It having been shown that it was referred to and discussed in connection with the penalty and that it was not properly before the jury, as stated in McDougal case, the burden was upon the State to rebut the presumption of injury. We have not been able to get our consent to say in such a serious matter as that of life and death the State has discharged the burden in the instant case. It is to be regretted that such incidents occur. No amount of foresight or ability on the part of the trial judge can prevent it.

A number of other questions are raised by bills of exception, all of which we have examined. None in our judgment present matters of serious moment and their discussion is therefore pretermitted.

For the error discussed the judgment of the trial court must be reversed and the cause remanded.

*Reversed and remanded.*